UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cr-20383-UNGARO/OTAZO-REYES

18 U.S.C. § 1349
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

SANTIAGO BORGES,
ERIK ALONSO,
DAMIAN MAYOL,
and
CRISTINA ALONSO,

Defendants.
_____/



FILED BY _____ RB _____
Deputy Clerk

*May 28, 2015*

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Miami

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment,

1.     The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were 65 or older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

3.     Part B of the Medicare program covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness.  The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care and was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

4.     Under the PHP benefit, Medicare covered the following services:  (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that were not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

5.     Medicare generally required that the PHP be provided at a facility that was hospital-based or hospital-affiliated, but Medicare also allowed a PHP to be provided in a Community Mental Health Center ("CMHC"), which was a provider type under Part A of Medicare.

6.     Medicare required that, to qualify for the PHP benefit, the services must have been reasonable and necessary for the diagnosis and active treatment of the individual's condition.  The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization.  The program must have been prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

2

7.     Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that has been treated.  Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

8.     Medicare did not cover programs involving primarily social, recreational, or diversionary activities.

9.     In order to receive payment from Medicare, a CMHC, medical clinic, or physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy or electronically.  A CMHC, medical clinic, and physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

10.    Medicare Part B was administered in Florida by a government contractor which, pursuant to contract with the United States Department of Health and Human Services, served as an agent on behalf of the United States Department of Health and Human Services to receive, adjudicate, and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs.  Medicare Part B paid CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services met Medicare requirements.

## Relevant Entities and the Defendants

11.    R&S Community Mental Health, Inc. ("R&S") was a Florida corporation, incorporated on or about April 7, 2003, that did business in Miami-Dade County, Florida.  R&S purported to operate a community mental health center, which offered PHP services to eligible Medicare beneficiaries.

3

12.      St. Theresa Community Mental Health Center, Inc. ("St. Theresa") was a Florida corporation, incorporated on or about January 12, 2004, that did business in Miami-Dade County, Florida.  St. Theresa purported to operate a community mental health center, which offered PHP services to eligible Medicare beneficiaries.

13.      Defendant **SANTIAGO BORGES**, a resident of Miami-Dade County, was an owner and operator of R&S and St. Theresa, and was listed as the president of R&S and St. Theresa.

14.      Defendant **ERIK ALONSO**, a resident of Miami-Dade County, was the clinical director of R&S and St. Theresa.

15.      Defendant **DAMIAN MAYOL**, a resident of Miami-Dade County, was the owner and operator of Transportation Services Providers, Inc., a Florida corporation, incorporated on or about January 13, 2006, that did business in Miami-Dade County, Florida. **DAMIAN MAYOL** was an office worker who handled patient recruiting for R&S and St. Theresa.

16.      Defendant **CRISTINA ALONSO,** a resident of Miami-Dade County, worked as a therapist at R&S and St. Theresa.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 14 and 16 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2008, through at least in or around October 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

4

**SANTIAGO BORGES,**
**ERIK ALONSO,**
**and**
**CRISTINA ALONSO,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

     a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, Unites States Code, 1347; and

     b.     to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

     3.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to patient recruiters in return for referring Medicare beneficiaries to serve as patients at R&S and

5

St. Theresa; (c) concealing the fraud through the creation of false and fraudulent documents; and (d) receiving and diverting the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators and for the purpose of furthering the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     **SANTIAGO BORGES, ERIK ALONSO**, and their co-conspirators paid and caused the payment of kickbacks to patient recruiters in return for referring Medicare beneficiaries to R&S and St. Theresa, which then billed Medicare for PHP services that were not medically necessary and not provided.

5.     **ERIK ALONSO, CRISTINA ALONSO**, and their co-conspirators falsified, fabricated, and altered, and caused the falsification, fabrication, and alteration, of patient documentation to make it appear that Medicare beneficiaries needed PHP services, qualified for PHP services, and received PHP services, when, in fact, such services were not medically necessary and not provided.

6.     **SANTIAGO BORGES, ERIK ALONSO, CRISTINA ALONSO**, and their co-conspirators submitted and caused the submission by R&S and St. Theresa of more than $65 million in false and fraudulent claims to Medicare, using interstate wire communications, seeking payment for PHP services purportedly provided to beneficiaries when, in fact, such services were not medically necessary and not provided.

7.     As a result of these false and fraudulent claims, **SANTIAGO BORGES, ERIK ALONSO,** and **CRISTINA ALONSO**, and their co-conspirators caused Medicare to pay more than $26 million to R&S and St. Theresa.

8.      **SANTIAGO BORGES, ERIK ALONSO, CRISTINA ALONSO**, and their co-conspirators transferred the fraud proceeds to themselves and companies they controlled, and used the proceeds to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Defraud the United States and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 15 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2008 through at least in or around October 2010, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**SANTIAGO BORGES,
ERIK ALONSO,
and
DAMIAN MAYOL,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and to commit certain offenses against the United States, that is:  to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including any kickback and bribe, directly and indirectly, overtly and covertly, in cash and in kind, including by check, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

7

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by:  (1) paying kickbacks and bribes in return for referring Medicare beneficiaries to R&S and St. Theresa to serve as patients; and (2) submitting and causing the submission of claims to Medicare for PHP services that R&S and St. Theresa purportedly provided to those beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **SANTIAGO BORGES, ERIK ALONSO, DAMIAN MAYOL,** and their co-conspirators offered and paid kickbacks to patient recruiters in return for referring Medicare beneficiaries to R&S and St. Theresa for PHP services.

5.      Co-conspirators of **SANTIAGO BORGES, ERIK ALONSO,** and **DAMIAN MAYOL** offered and paid kickbacks to Medicare beneficiaries in order to induce them to serve as patients for R&S and St. Theresa.

6.      **SANTIAGO BORGES, ERIK ALONSO, DAMIAN MAYOL,** and their co-conspirators submitted and caused R&S and St. Theresa to submit claims to Medicare for PHP services purportedly rendered to Medicare beneficiaries who were procured through the payment of bribes and kickbacks.

7.      **SANTIAGO BORGES, ERIK ALONSO, DAMIAN MAYOL,** and their co-conspirators caused Medicare to pay R&S and St. Theresa based upon the claims for PHP services purportedly rendered to Medicare beneficiaries who were procured through the payment of bribes and kickbacks.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about June 18, 2010, **SANTIAGO BORGES** endorsed check number 2736 in the approximate amount of $3,000 drawn on the bank account of R&S.

2.      On or about June 18, 2010, **DAMIAN MAYOL** paid a kickback, in whole and in part, to a co-conspirator patient recruiter by check number 1860 in the approximate amount of $3,149.50 drawn on the corporate account of Transportation Services Providers, Inc, a company he controlled.

3.      On or about July 7, 2010, **DAMIAN MAYOL** paid a kickback, in whole and in part, to a co-conspirator patient recruiter by check number 1879 in the approximate amount of $3,149.50 drawn on the corporate account of Transportation Services Providers, Inc, a company he controlled.

4.      On or about July 19, 2010, **ERIK ALONSO** endorsed check number 2811 in the approximate amount of $4,000 drawn on the bank account of R&S.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 3-4
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1.      Paragraphs 1 through 12 and 15 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

9

**DAMIAN MAYOL,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set for below:

| Count | Approximate Date | Approximate Amount of Kickback |
|-------|------------------|-------------------------------|
| 3 | June 18, 2010 | $3,149.50 |
| 4 | July 7, 2010 | $3,149.50 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNT 5
### Conspiracy to Make False Statements Relating to Health Care Matters
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 12, 14, and 16 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2008 through at least in or around October 2010, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ERIK ALONSO**
**and**
**CRISTINA ALONSO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

(a)     to knowingly and willfully falsify, conceal, and cover up by any trick, scheme, and device a material fact in connection with the delivery of and payment for health care benefits, items, and services involving a health care benefit program, that is, Medicare, in violation of Title 18, United States Code, Section 1035(a)(1); and

(b)     to knowingly and willfully make any materially false, fictitious, and fraudulent statements and representations, and knowingly and willfully make and use a materially false writing and document, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and involving a health care benefit program, that is, Medicare, in violation of Title 18, United States Code, Section 1035(a)(2).

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (1) creating false and fraudulent medical records to conceal the fact that Medicare beneficiaries did not receive legitimate PHP treatment at R&S and St. Theresa; and (2) creating false and fraudulent medical records to make it appear that Medicare beneficiaries were properly qualified to receive PHP treatment at R&S and St. Theresa.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     Co-conspirators caused Medicare beneficiaries to be admitted to R&S and St. Theresa even though they did not qualify for PHP treatment.

5.     **ERIK ALONSO, CRISTINA ALONSO,** and their co-conspirators falsified, fabricated, and altered, and caused the falsification, fabrication, and alteration, of patient documentation to make it appear that Medicare beneficiaries needed PHP services, qualified for

11

PHP services, and received PHP services, when, in fact, such services were not medically necessary and not provided.

6.      **ERIK ALONSO**, **CRISTINA ALONSO**, and their co-conspirators created falsified patient documentation to support the submission by R&S and St. Theresa of more than $65 million in false and fraudulent claims to Medicare.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about July 19, 2010, **ERIK ALONSO** endorsed check number 2811 in the approximate amount of $4,000 drawn on the bank account of R&S.

2.      On or about June 18, 2010, **CRISTINA ALONSO** endorsed check number 2711 in the approximate amount of $1,820 drawn on the bank account of R&S.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 982)

1. The allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendants, **SANTIAGO BORGES, ERIK ALONSO, DAMIAN MAYOL**, and **CRISTINA ALONSO**, have an interest.

2. Upon conviction of any violation alleged in this Indictment, the defendant so convicted shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property which is subject to forfeiture includes, but is not limited to, the following: A sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violations alleged in this Indictment, which the United States of America will seek as a forfeiture money judgment, jointly and severally, against the defendants as part of their respective sentence.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853.

A TRUE BILL

_____

FOREPERSON

_____, Chief, Crim Div
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
GEJAA GOBENA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
A. BRENDAN STEWART
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

SANTIAGO BORGES, et al.,

                              Defendant.
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| X   Miami | _____ Key West | |
| _____ FTL | _____ WPB | _____ FTP |

New Defendant(s)          Yes _____          No _____
Number of New Defendants          _____
Total number of counts          _____

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:       (Yes or No)       Yes
      List language and/or dialect       Spanish

4.    This case will take   20   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

(Check only one)                                        (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ | |
| II | 6 to 10 days | | Minor | _____ | |
| II | 11 to 20 days | X | Misdem. | _____ | |
| IV | 21 to 60 days | _____ | Felony | x | |
| V: | 61 days and over | _____ | | | |

6.    Has this case been previously filed in this District Court?   (Yes or No)   No
If yes:
Judge:                                        Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?   (Yes or No)   No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No)   NO

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   X   No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   X   No

_____
BRENDAN STEWART
DOJ ATTORNEY
Court ID No.: A5501801

*Penalty Sheet(s) attached                                        REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: SANTIAGO BORGES**

**Case No:** _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: ERIK ALONSO**

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\* Max. Penalty:**      Five (5) years' imprisonment

Count #: 5

Conspiracy to Make False Statements Relating to Health Care Matters

Title 18, United States Code, Section 371

**\* Max. Penalty:**      Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: DAMIAN MAYOL**

**Case No**:

Count #: 2

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\* Max. Penalty**: Five (5) years' imprisonment

Count #: 3-4

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:** Five (5) years' imprisonment as to each count

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: CHRISTINA ALONSO**

**Case No:**

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Twenty (20) years' imprisonment

Count #: 5

Conspiracy to Make False Statements Relating to Health Care Matters

Title 18, United States Code, Section 371

**\* Max. Penalty:**      Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**